972 P.2d 647

**WHITECO OUTDOOR ADVERTISING, a division of Whiteco Industries, Inc., a Nebraska corporation, Plaintiff/Appellee,**

v.

**CITY OF TUCSON, an Arizona municipal corporation, Defendant/Appellant.**

**No. 2 CA–CV 97–0209.**

Court of Appeals of Arizona, Division 2, Department B.

April 28, 1998.

Review Denied March 19, 1999.

Thomas J. Berning, City Attorney by Frank William Kern, III and Laura Brynwood, Tucson, for Defendant/Appellant.

Lewis and Roca by Frank S. Bangs, Jr. and Mary Beth Savel, Tucson, for Plaintiff/Appellee.

PELANDER, Presiding Judge.

¶ 1 The primary issue in this case is whether a charter city, in the exercise of its general regulatory police powers, may ban light fixtures mounted on the bottom of existing billboards, or whether Arizona's nonconforming use statute, A.R.S. § 9–462.02(A), precludes it from doing so. Adopting the latter view, the trial court granted partial summary judgment in favor of Whiteco Outdoor Advertising. The City of Tucson appeals from that ruling and the trial court's judgment entered thereon. We vacate the judgment and remand for further proceedings.

## BACKGROUND

¶ 2 Whiteco owns and maintains outdoor billboards used to display advertising copy. As of 1985, Whiteco had within the city a number of billboards illuminated by lighting fixtures mounted to the bottom of the billboard. In 1985, the City adopted an Outdoor Lighting Code (OLC) (Ordinance No. 6344), which required billboard lighting fixtures to be mounted on the top of the sign structure but exempted certain billboards of a specified size and design, within certain light spillage tolerances. The 1985 OLC expressly provided that any outdoor light fixtures "lawfully installed prior to and operable on the effective date of this code," with certain inapplicable exceptions, were "exempt from all requirements of this code."

¶ 3 In 1987, the City adopted another OLC (Ordinance No. 6786), which required all billboard lighting to be mounted on the top of the sign structure, and which removed the exemption for bottom-mounted billboard lighting. The 1987 OLC prohibited "bottom-mounted outdoor advertising sign lighting ... after December 31, 1987." In 1994, the City again adopted an amended OLC (Ordinance No. 8210). Like the 1987 version, the

1994 OLC required all lighting fixtures used to illuminate an outdoor advertising sign to be mounted on the top of the sign structure, with no exemptions.

¶ 4   In August 1995, the City's Development Services Director notified Whiteco that 170 of its billboards were in violation of the OLC's prohibition of bottom-mounted billboard illumination and directed Whiteco to abate the violations.   Whiteco appealed to the City Board of Appeals (the Board), contending that the City's ability to regulate billboard lighting derived from the state's zoning statutes and that the subject billboards are a protected nonconforming use under § 9–462.02(A), which provides in pertinent part:

> Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

After a hearing, the Board denied Whiteco's appeal, finding that "Whiteco's utilization of bottom mounted illumination is not a nonconforming use, enforcement of the [OLC] against Whiteco is not discriminatory or in violation of Whiteco's property rights...." Whiteco then filed this action in superior court, seeking special action relief ordering the city not to enforce the OLC prohibition against Whiteco, and a declaratory judgment that the OLC as applied only to billboard lighting is discriminatory and violates Whiteco's due process rights.

¶ 5   The City moved for summary judgment, and Whiteco filed a cross-motion for partial summary judgment on the interpretation of § 9–462.02.   The trial court denied the City's motion and granted Whiteco's, concluding that the 1985 and 1987 OLC's "are zoning ordinances."   The trial court also concluded that Whiteco's billboards illuminated by bottom-mounted lighting fixtures in existence before the 1987 OLC took effect are protected as nonconforming uses under § 9–462.02(A), and that the prohibition against such billboards "cannot be applied."   The court noted, however, that "such billboards are subject to and must comply with reasonable regulations under the governments' [sic] police power to protect the health, safety, welfare or morals."

¶ 6   The trial court denied the City's post-ruling motions for clarification and to amend its answer by asserting a counterclaim.   Over the City's opposition, the trial court later entered judgment for Whiteco, declaring that its billboards illuminated with bottom-mounted lighting fixtures at the time the City adopted the 1987 OLC "are valid prior non-conforming uses protected under A.R.S. § 9–462.02," and that the City exceeded its authority in requiring the removal of such bottom-mounted lighting fixtures.   This appeal followed.[1]

## STANDARD OF REVIEW

¶ 7   Because of the procedural posture of this case, the applicable standard of review is somewhat convoluted.   On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law.   *Prince v. City of Apache Junction*, 185 Ariz. 43, 912 P.2d 47 (App.1996).   In addition, issues in-

---

1.   In its minute entry granting partial summary judgment for Whiteco on the interpretation of § 9–462.02, the trial court noted that "the constitutional issues raised by the parties need not be addressed."   The judgment from which the City appeals does not mention Whiteco's constitutional claims and contains no "express determination that there is no just reason for delay and . . . express direction for the entry of judgment," as required by Rule 54(b), Ariz.R.Civ.P., 16 A.R.S. Therefore, the judgment on its face appears to be nonappealable.   *See* A.R.S. § 12–2101; *Stevens v. Mehagian's Home Furnishings, Inc.*, 90 Ariz. 42, 365 P.2d 208 (1961).   Notwithstanding that ap-

parent jurisdictional defect and the parties' failure to address that issue in their briefs, *see* Rules 13(a)(3), 13(b)(1), Ariz.R.Civ.App.P., 17B A.R.S., we note that the trial court (Judge Quigley) found, albeit after entry of the judgment by a different judge (Judge Lee), that "there is no reason to delay entry of this judgment."   Accordingly, we find jurisdiction and address the issues on the merits.   *See Arizona Bank v. Superior Court*, 17 Ariz.App. 115, 495 P.2d 1322 (1972) (trial court need not formulate its determination using precise language of Rule 54(b), and clear expression of intent to make judgment immediately appealable is sufficient).

volving interpretation of statutes or ordinances are questions of law subject to this court's de novo review. *Id.; Neal v. City of Kingman,* 167 Ariz. 574, 810 P.2d 572 (App. 1990), *vacated in part on other grounds,* 169 Ariz. 133, 817 P.2d 937 (1991). On the other hand, both the superior court and this court are bound by the Board's factual findings and generally should defer to its decision unless it is "arbitrary and capricious or an abuse of discretion." *Murphy v. Town of Chino Valley,* 163 Ariz. 571, 574, 789 P.2d 1072, 1075 (App.1989). *See also Gannett Outdoor Co. v. City of Mesa,* 159 Ariz. 459, 768 P.2d 191 (App.1989). Although this case commenced with an administrative board decision, this court is "free to draw [its] own conclusions on whether an agency misinterpreted the law" and may substitute its judgment for the Board's assessment of the legal effect of the underlying facts. *Murphy,* 163 Ariz. at 574, 789 P.2d at 1075; *Marlar v. State,* 136 Ariz. 404, 666 P.2d 504 (App.1983).

## DISCUSSION

¶ 8 In granting partial summary judgment for Whiteco, the trial court stated:

> At the time of the adoption of the 1985 OLC and the 1987 OLC, the cited billboards were illuminated with bottom-mounted lighting fixtures. Consequently the cited billboards fall within the protection of A.R.S. § 9–462.02, as an existing non-conforming use at the time of the adoption of the ordinances. As the cited billboards were existing non-conforming uses at the time of the adoption of the ordinances, the Defendants acted in excess of its [sic] authority in requiring the removal of the bottom-mounted lighting fixtures. However, the City of Tucson may still pass reasonable regulations regarding these cited billboards to protect the public safety, health, welfare, or morals and may include limitations on light spillage.

That ruling, in turn, hinged on the trial court's determination that the City's OLC's are "zoning ordinances." We disagree with that characterization and with the ultimate ruling based thereon.

¶ 9 "[Z]oning authority comes from the state," and "the power must be exercised within the limits and in the manner prescribed in the [state's] grant [of zoning power to a city] and not otherwise." *City of Scottsdale v. Scottsdale Associated Merchants, Inc.,* 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978). Municipal regulation of billboards and signs clearly is a zoning matter subject to this state's zoning statutes. *See Outdoor Systems, Inc. v. City of Mesa,* 169 Ariz. 301, 819 P.2d 44 (1991); *Gannett.* Specifically, the "Municipal Zoning" laws permit cities, "in order to conserve and promote the public health, safety and general welfare," to "[r]egulate signs and billboards." A.R.S. § 9–462.01(A)(2). In addition, those laws define "[z]oning ordinance" as "a municipal ordinance regulating the use of the land or structures, or both, as provided in [A.R.S. Title 9, Ch. 4, art. 6.1]." § 9–462(A)(5). "Although a municipality is not required to have sign regulations, ... when a municipality does regulate signs it [must] be done as zoning regulations and conform to the master plan established by the City." *Levitz v. State,* 126 Ariz. 203, 206, 613 P.2d 1259, 1262 (1980).

¶ 10 The issue, then, is whether the OLC, as applied to outdoor billboard advertising, is a sign regulation that is included within the City's zoning power and therefore limited by state zoning laws, including the nonconforming use statute. We think not. Neither the state zoning laws nor the foregoing cases which Whiteco cites mention, let alone restrict, municipal authority to regulate lighting or illumination of signs.[2] *Cf. Outdoor Systems,* 169 Ariz. at 309, 819 P.2d at 52 ("Zoning is fundamentally the control of *land* use, of which the regulation of buildings,

---

2. Although it does not expressly grant cities authority to regulate outdoor lighting, A.R.S. § 49–1106, first enacted in 1986 and dealing with light pollution, states: "The provisions of this article are cumulative and supplemental and shall not apply within any county, city or town which by ordinance or resolution has adopted provisions restricting light pollution which are equal to or

more stringent than the provisions of this chapter." Similarly, A.R.S. § 9–276(A)(24), first enacted in 1973, permits cities to "[a]dopt and enforce standards for shielding and filtration of commercial or public outdoor portable or permanent light fixtures in proximity to astronomical or meteorological laboratories."

signs, or other structures attached to the land is only a part."). In contrast, Tucson's charter provides that the City "shall have and may exercise all further and additional powers necessary or appropriate to a municipal corporation and the general welfare of its inhabitants, or granted by the laws of the state, and which it would be competent and lawful for [the] Charter to enumerate or set forth specifically...." Tucson City Charter, Tucson Code, pt. I, ch. IV, § 1(29). As our supreme court has recognized:

> The City of Tucson is a charter or "home rule" city organized pursuant to article 13, § 2 of the Arizona Constitution. As such, it may exercise all powers granted by its charter, provided that such exercise is not inconsistent with either the constitution or general laws of the state.

*Jett v. City of Tucson*, 180 Ariz. 115, 118, 882 P.2d 426, 429 (1994) (footnote omitted). *See also Strode v. Sullivan*, 72 Ariz. 360, 363, 236 P.2d 48, 50 (1951), *quoting Mayor & Common Council of City of Prescott v. Randall*, 67 Ariz. 369, 371, 196 P.2d 477, 478 (1948) ("a charter city is sovereign in all of its 'municipal affairs' where the power ... to be exercised has been specifically or by implication granted in its charter"); *Hamilton v. City of Mesa*, 185 Ariz. 420, 425, 916 P.2d 1136, 1141 (App.1995) ("A city may adopt a city charter as its organic law.").

¶ 11 In our view, the City's charter provides a general police power to regulate billboard lighting that is not inconsistent with Arizona's Constitution or general laws, and is not restricted by Arizona's zoning statutes. That the City's 1985 OLC exempted from its regulatory scope billboards with bottom-mounted lighting fixtures does not grant permanent "grandfathered" status to such fixtures or preclude subsequent OLC regulation affecting them. *See City of Fayetteville v. S & H, Inc.*, 261 Ark. 148, 547 S.W.2d 94 (1977) (municipal ordinance prohibiting flashing or blinking lights on signs was exercise of municipal police power authority and not zoning and, therefore, could be applied to existing signs with blinking or flashing lights).

¶ 12 Even if the OLC's were subject to Arizona zoning laws, that would not alter our conclusion. Relying on § 9–462.02(A), Whiteco contends, and the trial court agreed, that the City may not "retroactively" ban Whiteco's bottom-mounted lighting fixtures.[3] We agree with the City, however, that that statute "only protects Whiteco's non-conforming billboard structure as a land use for the display of advertising copy," and "does not protect the means by which the billboard is illuminated." The "existing property" protected by § 9–462.02, in our view, is Whiteco's use of its illuminated outdoor advertising structures and the surrounding land on which they sit, *see Outdoor Systems*, not the mounting or location of lighting fixtures that provide the billboard illumination. To suggest that the City, in its exercise of general police powers, may not pass any regulations affecting the manner or mode of billboard lighting without violating the nonconforming use statute is an overbroad proposition that we decline to adopt.

¶ 13 In an analogous case, Division One of this court rejected a similar proposition in *Watanabe v. City of Phoenix*, 140 Ariz. 575, 683 P.2d 1177 (App.1984). In that case, the court held that the city, under a general police power zoning ordinance, could require dust-proofing to the parking and yard areas of the property owners' non-conforming uses. In so holding, the court rejected the property owners' contention that "the city may not enforce any zoning ordinance which affects their existing non-conforming property," *id.* at 577, 683 P.2d at 1179, and noted that the phrase "existing property" in § 9–462.02(A), "was not intended by the legislature to mean that a city may not pass any ordinance which has any physical effect on the property." *Id.* at 578, 683 P.2d at 1180. As the court stated: "While nonconforming uses existing at the time [a] zoning ordinance became effective cannot be prohibited, they are subject to reasonable regulations under the police power to protect the public health, safety, welfare, or morals." *Id.* at 577, 683 P.2d at 1179.

---

3. Because the law and public policy not only disfavor nonconforming uses but also favor their eventual elimination, we strictly construe § 9–462.02 against Whiteco's interests. *See City of Glendale v. Aldabbagh*, 189 Ariz. 140, 939 P.2d 418 (1997); *Outdoor Systems*.

¶ 14 Just as the court in *Watanabe* held that the City of Phoenix could compel paving as a means to control dust, the City may compel Whiteco to install top-mounted lighting on its cited billboards as a means to prevent light pollution and promote astronomical objectives. As Whiteco correctly points out, however, the court in *Watanabe* also noted that the regulation requiring paving had "no effect on the existing nonconforming uses of the subject properties...." *Id.* at 578, 683 P.2d at 1180. Although Whiteco argues that requiring removal and relocation of its lighting fixtures mounted on the bottom of billboards would be impracticable or unsafe, those were factual issues for the Board to decide. Based on this record, we cannot say the Board abused its discretion or acted arbitrarily or capriciously in implicitly finding otherwise. *See Murphy; cf. Home Builders Assn. of Central Arizona v. City of Scottsdale,* 187 Ariz. 479, 482–83, 930 P.2d 993, 996–97 (1997) ("Courts must accord municipalities considerable deference and upset their legislative decisions only if they are shown to be arbitrary and without factual justification."), *cert. denied,* —— U.S. ——, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997).

¶ 15 The trial court erred in characterizing the OLC's as zoning ordinances and in ruling that § 9–462.02(A) precludes the City from applying its current OLC to Whiteco's existing billboard light fixtures. Therefore, we vacate the judgment entered in favor of Whiteco on October 1, 1997, and deny its request for attorney's fees. In view of this disposition, we do not address the City's other issues. Because the trial court did not address Whiteco's constitutional claims,[4] we remand for consideration and resolution of those claims and for reconsideration, if appropriate, of the City's motion for summary judgment.

ESPINOSA, J., and HOWARD, J., concur.

**4.** *See generally* Annotation, *Validity and Construction of Zoning Regulations Relating to Illuminat-* *ed Signs,* 30 A.L.R.5th 549 (1995).