IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

VICTOR SANCHEZ-RAVUELTA AND JANETTE DODGE, A MARRIED COUPLE,
ON BEHALF OF THEMSELVES AND THEIR MINOR CHILDREN,
ELIJAH SANCHEZ AND AMELIA SANCHEZ,
*Plaintiffs/Appellants*,

*v.*

YAVAPAI COUNTY, TOWN OF DEWEY-HUMBOLDT, AND STATE OF ARIZONA,
*Defendants/Appellees*.

_____

VICTOR SANCHEZ-RAVUELTA AND JANETTE DODGE, A MARRIED COUPLE,
ON BEHALF OF THEIR MINOR CHILDREN,
ELIJAH SANCHEZ AND AMELIA SANCHEZ,
*Cross-Appellees*,

*v.*

TOWN OF DEWEY-HUMBOLDT,
*Cross-Appellant*.

_____

No. 2 CA-CV 2023-0059
Filed April 3, 2024

_____

Appeal from the Superior Court in Maricopa County
No. CV2022051670
The Honorable Melissa Iyer Julian, Judge

**DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART
AND REMANDED**

_____

COUNSEL

Ahwatukee Legal Office P.C., Phoenix
By David L. Abney

and

Amara & Associates LLC, Phoenix
By Amara Edblad
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Wieneke Law Group PLC, Tempe
By Kathleen L. Wieneke, Laura Van Buren, and Jacob A. Weld
*Counsel for Defendant/Appellee Yavapai County*

Doyle Hernandez Millam, Phoenix
By William H. Doyle, Brandon D. Millam, and Nathan R. Andrews
*Counsel for Defendant/Appellee/Cross-Appellant Town of Dewey-Humboldt*

Kristin K. Mayes, Arizona Attorney General
By Lawrence V. Robertson, Assistant Attorney General, Tucson
and Daniel P. Schaack, Assistant Attorney General, Phoenix
*Counsel for Defendant/Appellee State of Arizona*

---

**OPINION**

---

Judge Eckerstrom authored the opinion of the Court, in which Judge Kelly concurred and Presiding Judge Eppich concurred in part and dissented in part.

E C K E R S T R O M, Judge:

**¶1**        Plaintiffs Victor Sanchez-Ravuelta and Janette Dodge appeal from the dismissal of their personal-injury-related claims against defendants Yavapai County, the Town of Dewey-Humboldt, and the State of Arizona.[1]  The town cross-appeals the superior court's partial grant of

---

[1]Elijah Sanchez and Amelia Sanchez are also named plaintiffs.  They are the minor children of Sanchez-Ravuelta and Dodge.  We refer to the family collectively as "plaintiffs," and when necessary to distinguish, refer

2

the plaintiffs' motion for new trial. For the following reasons, we dismiss the town's cross-appeal and affirm the court's dismissal of plaintiffs' claims for failing to provide a proper notice of claim. We reverse the court's dismissal of plaintiffs' claim of gross negligence by the Arizona State Department of Liquor Licenses, and we remand for further proceedings as to that claim.

**Factual and Procedural Background**

¶2          On appeal from the grant of a motion to dismiss, we take the facts alleged in the complaint as true, viewing them in the light most favorable to the plaintiffs. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 552 (App. 1995). The complaint alleges that in April 2021, David Browne caused a multi-vehicle collision at an intersection on State Route 69 in the Town of Dewey-Humboldt in Yavapai County. After leaving the parking lot of Billy Jack's Saloon and Grill, a bar, Browne stopped at a stop sign and then pulled his vehicle into traffic. Browne struck the passenger side of a passing vehicle, causing it to spin and collide with the plaintiffs' vehicle. As a result, the plaintiffs suffered serious physical and emotional injuries. Browne had a blood alcohol concentration of more than .30 at the time of the accident.

¶3          The plaintiffs brought the present lawsuit claiming the defendants had collectively breached their duties to warn of the unreasonably dangerous and hazardous intersection; the state had breached its duty to enforce Browne's suspended license, court-ordered interlock, and court-ordered incarceration for Browne's previous driving under the influence of an intoxicant (DUI) convictions;[2] and the state had breached its duty to take reasonable measures to prevent Billy Jack's from creating hazardous conditions by overserving its customers. The plaintiffs also asserted a claim for negligent infliction of emotional distress as to all defendants.

---

to Sanchez-Ravuelta and Dodge as "adult plaintiffs" and Elijah Sanchez and Amelia Sanchez as "minor plaintiffs."

          [2]The plaintiffs initially brought this claim against all defendants, but subsequently dismissed it as to the county and the town.

¶4 The defendants each moved to dismiss the complaint arguing, in part, that the notices of claim they had received were defective.[3] The state also argued that it owed no duty to the plaintiffs to prevent Billy Jack's from creating hazardous conditions by overserving customers. After oral argument on the motions, the superior court entered an unsigned under-advisement ruling dismissing all of the plaintiffs' claims. It found that the notices of claim did not contain sufficient facts as to any of the claims except those against the state relating to its duty to prevent Billy Jack's from creating hazardous conditions. As to those claims, the court found the state owed no duty to the plaintiffs to "prevent drunk drivers from causing collisions."

## Jurisdiction

### A. Plaintiffs' Appeal

¶5 The town challenges our jurisdiction to hear the plaintiffs' appeal, arguing it "should be denied as untimely due to the procedural irregularities introduced by Plaintiffs." We also have an independent duty to determine whether we have jurisdiction to entertain an appeal. *Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465 (App. 1997).

¶6 After the superior court dismissed all of the plaintiffs' claims, the minor plaintiffs filed a series of motions, countered by the defendants, litigating whether various claims should have been dismissed with or without prejudice. That litigation ultimately resulted in the court entering four different final judgments, each purporting to amend the previous judgment.

¶7 The town argues that the plaintiffs' notice of appeal from the second purported final judgment was operative because, by not addressing

---

[3]The plaintiffs argued to the superior court that the inclusion of the notice of claim in the defendants' motions to dismiss converted them to motions for summary judgment. *See* Ariz. R. Civ. P. 12(d). Citing *Strategic Development & Construction, Inc. v. 7th & Roosevelt Partners, LLC*, the court rejected this argument, noting that the operative complaint referenced the notices of claim and the "notices are essential to the litigation of their claims." *See* 224 Ariz. 60, ¶ 14 (App. 2010) (conversion unnecessary when materials not appended to complaint are central to complaint). The parties do not challenge this issue on appeal, and we therefore do not address it. *See Lunney v. State*, 244 Ariz. 170, ¶ 40 (App. 2017).

the motion for new trial, that judgment denied the motion by operation of law. They further argue that because jurisdiction transferred to the court of appeals at that point, any further orders by the superior court were void, and the plaintiffs' failure to pursue that appeal is fatal to their present appeal by making it untimely. We disagree.

¶8            A superior court's failure to rule on a motion may constitute a denial of that motion by operation of law. *See Pearson v. Pearson*, 190 Ariz. 231, 237 (App. 1997) (failure to rule on fee request); *State v. Hill*, 174 Ariz. 313, 323 (1993) (failure to rule on motion to strike presentence report). However, the second purported final judgment was based on the town's proposed form of judgment, which had been filed nineteen days before the plaintiffs filed their motion for new trial. Furthermore, the court explicitly stated in a subsequent order that it had "inadvertently entered" a final judgment "without realizing that an appeal-tolling motion for new trial had been filed." We therefore cannot conclude that the second purported final judgment denied the plaintiffs' motion for new trial by operation of law. Further, this time-extending motion was still pending when the plaintiffs filed their notice of appeal. Thus, the appeal was premature and effectively suspended until the motion was decided. *See* Ariz. R. Civ. App. P. 9(e).

¶9            We also disagree with the town that we lack jurisdiction because the plaintiffs failed to provide us notice that a motion was still pending before the superior court. *See* Ariz. R. Civ. App. P. 9(e)(2) (notice of pending time-extending motion must be given to court of appeals when appellate case number assigned under Rule 12, Ariz. R. Civ. App. P.). In this case, the appellate clerk issued the notice regarding assignment of a case number pursuant to Rule 12 on January 5, 2023. At that time, the motion for new trial was pending, and the superior court had issued its order vacating the second purported final judgment. As those proceedings were part of the record at the time we received it, we see no reason to have required the appellant to provide separate notice. The record itself gave this court notice of the pending motion. Indeed, in view of the superior court having vacated its earlier purported final judgment, that court could have dismissed the appeal. *See* Ariz. R. Civ. App. P. 26.

¶10           Shortly after the Rule 12 notice, the superior court entered its third final judgment, which disposed of the plaintiffs' motion for new trial. The court properly certified the third final judgment under Rule 54(b) because although the adult plaintiffs' claims were dismissed with prejudice, the minor plaintiffs' claims were all dismissed without prejudice, and thus, there was no final judgment as to the minor plaintiffs' claims. *See,*

*e.g.*, *Grand v. Nacchio*, 214 Ariz. 9, ¶ 12 (App. 2006) (dismissal without prejudice not appealable final judgment); *Osuna v. Wal-Mart Stores, Inc.*, 214 Ariz. 286, ¶ 11 (App. 2007) (similar). The time for the plaintiffs to file a notice of appeal therefore began when the court entered the third final judgment. Because the plaintiffs filed a timely notice from that judgment, their appeal is not defeated on the basis of timeliness. *See* Ariz. R. Civ. App. P. 9(a), (e)(1)(D). As such, we have jurisdiction over the plaintiffs' appeal.

**B. The Town's Cross-Appeal**

**¶11**         Although the plaintiffs do not challenge our jurisdiction over the town's cross-appeal, we have an independent duty to evaluate our jurisdiction. *See Sorensen*, 191 Ariz. at 465. A notice of cross-appeal must be filed "no later than 20 days after appellant's filing of a notice of appeal, or 30 days after entry of the judgment from which the appeal is taken, whichever is later." Ariz. R. Civ. App. P. 9(b). As noted above, the plaintiffs perfected their appeal by filing a notice of appeal from the third final judgment. The superior court therefore lost jurisdiction, and the fourth purported final judgment it entered was void because it was not in furtherance of the appeal. *See In re Marriage of Johnson & Gravino*, 231 Ariz. 228, ¶ 6 (App. 2012). The town did not file a notice of cross-appeal in this matter until after the plaintiffs filed a notice of appeal from the void, fourth judgment. Because the notice of cross-appeal was filed thirty-four days after the plaintiffs' operative notice of appeal and sixty-three days after the operative third final judgment, it is untimely, and we lack jurisdiction over the town's cross-appeal. *See* Ariz. R. Civ. App. P. 9(b).

**Discussion[4]**

**I.   Notice of Claim**

**¶12**         The plaintiffs assert the superior court erred by dismissing their claims on the basis that their notices of claim contained insufficient facts. We review de novo whether a notice of claim complies with statutory requirements. *Jones v. Cochise County*, 218 Ariz. 372, ¶ 7 (App. 2008).

---

[4]From this point forward when referencing "plaintiffs" we are solely referring to Sanchez-Ravuelta and Dodge because, as explained above, the minor plaintiffs were dismissed without prejudice and are not subject to the merits of this appeal.

¶13        The plaintiffs provided all defendants with the same notice of claim, which recited the circumstances of the accident.  It stated that the plaintiffs' injuries were the result of Browne's negligence and that the accident had been caused when Browne accelerated into the path of two vehicles travelling along State Route 69.  It also stated that Browne had been drinking at Billy Jack's "up until minutes prior to the subject collision."  The notice of claim additionally provided the following "legal basis":

> Based upon information and belief, and without limitation, [t]he Arizona Department of Liquor Licenses and Control and Agents thereof—all had duties imposed upon them by Arizona Statute, and common law, to follow all laws, prevent dangerous conditions, to protect against hazards, not to create a dangerous condition, to warn of dangerous conditions, and to otherwise assure the safety of the Sanchez Family claimants.  The aforenoted tortfeasors were further negligent in ways not set forth with particularity, and all of the tortfeasors['] actions, and/or inactions, set forth herein were the proximate cause and actual cause of each claimant[']s injuries.  In this matter, the Arizona Department of Liquor Licenses and Control issued a liquor license to Billy Jack[']s on November 11, 1986 and renewed that license on August 10, 2021, giving a valid liquor license through August 31, 2021.  This was done despite it being open and obvious through their advertising and website that Billy Jack[']s seeks to overserve their customers.

¶14        The notice of claim described in great detail the injuries suffered by the plaintiffs and medical costs resulting from the accident.  The notice of claim also stated that the plaintiffs suffered extreme emotional distress from having witnessed each other suffer physical injuries.  It provided a sum-specific amount for each plaintiff, totaling $385 million.

¶15        In ruling on the motions to dismiss, the superior court concluded that the notice of claim only alleged a claim against the state for "negligent issuance of a liquor license to Billy Jack's."  Therefore, it was insufficient as to the plaintiffs' other claims against the state.  The court also

concluded that the notice of claim was insufficient with respect to the plaintiffs' claims against the other defendants because it did "not contain any factual allegations against the County or the Town."

¶16 A notice of claim that complies with the requirements of A.R.S. § 12-821.01 is a prerequisite to suing a public entity. *Donovan v. Yavapai Cnty. Cmty. Coll. Dist.*, 244 Ariz. 608, ¶ 7 (App. 2018); *see also Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 6 (2007) (failure to comply with statute bars claim). Section 12-821.01(A) has two distinct requirements regarding facts that must be included in a notice of claim. A proper notice of claim (1) "shall contain facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed," as well as (2) "a specific amount for which the claim can be settled and the facts supporting that amount." § 12-821.01(A). These requirements allow the public entity an opportunity to investigate and assess its potential liability, engage in settlement negotiation, and assist in financial planning and budgeting. *Deer Valley*, 214 Ariz. 293, ¶ 6.

¶17 The plaintiffs primarily argue that after our supreme court's opinion in *Backus v. State*, 220 Ariz. 101 (2009), the sufficiency of facts in a notice of claim is viewed from the claimant's perspective, meaning superior courts may not scrutinize the sufficiency of the factual disclosure. The plaintiffs argue that a claimant generally complies with the fact requirements of § 12-821.01(A) so long as the notice of claim provides some facts forming the basis of liability. We disagree that such a standard applies here.

¶18 In *Backus*, our supreme court concluded that a claimant complies with the requirement to include facts supporting the specific amount claimed "by providing the factual foundation that the claimant regards as adequate to permit the public entity to evaluate the specific amount claimed." 220 Ariz. 101, ¶ 23. The court noted that § 12-821.01 "does not require a claimant to set out facts 'sufficient' to support the amount claimed" under the second fact requirement, whereas it does require facts "'sufficient to permit' the public entity to evaluate liability" under the first fact requirement. *Id.* ¶ 22 (quoting *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, ¶ 40 (App. 2008)). It reasoned that the legislature "would have said so" if it "had intended to require that a notice contain facts 'sufficient' to support the amount claimed." *Id.*

¶19 Here, the plaintiffs' claims were dismissed because the superior court found that their notices did not contain "facts sufficient to permit the public entity . . . to understand the *basis on which liability is*

*claimed*." § 12-821.01(A) (emphasis added). The legislature has explicitly required that the facts be "sufficient" in this context, *id.*, and to extend the *Backus* standard here would render the statute's language superfluous, *see Deer Valley*, 214 Ariz. 293, ¶ 8 (each word given meaning so no part will be void).[5] Furthermore, the statute requires sufficient facts such that the *public entity* may understand the basis of the claimed liability. § 12-821.01(A). Such language directly contradicts the plaintiffs' assertion that the sufficiency of facts regarding liability must be evaluated from the claimants' perspective. We are reluctant to construe a statute to mean something other than what the words plainly state "absent a clear indication of legislative intent to the contrary." *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529 (1994). Where the statutory language is clear, as it is here, it is this court's duty to apply that language as written. *See id.*

**¶20** Because the notices of claim contained only facts sufficient for the state to understand the basis of the plaintiffs' negligent issuance of a liquor license claim, we agree with the superior court's conclusion that the notices of claim were insufficient as a matter of law as to all other claims. The notices do not specifically mention the county or the town at all beyond the cover page's list of "[t]ortfeasors." And although the notices explain the factual circumstances of the accident, they do not mention anything regarding hazardous conditions present at the intersection nor Browne's prior DUI convictions and related court orders—facts necessary to link the accident to the defendants' other allegedly tortious actions. The plaintiffs also assert "[t]he notices of claim contained a copy of the collision report written by the Arizona Department of Public Safety," but they have not identified where in the record it is located. *See* Ariz. R. Civ. App. P. 13(a)(7)(A) (arguments must contain "appropriate references to the portions of the record on which the appellant relies"). We do not consider

---

[5]The plaintiffs cite other cases in support of their position that the *Backus* standard applies here. *See Yollin v. City of Glendale*, 219 Ariz. 24, ¶¶ 22-24 (App. 2008); *Picht v. Peoria Unified Sch. Dist. No. 11 of Maricopa Cnty.*, 641 F. Supp. 2d 888, 895-96 (D. Ariz. 2009). However, *Yollin* only addressed the statute's requirement that facts support the specific amount claimed, 219 Ariz. 24, ¶¶ 22-24, and *Picht* is not binding on this court, *see Arpaio v. Figueroa*, 229 Ariz. 444, ¶ 11 (App. 2012). To the extent *Picht* suggests generally that a "sufficiency standard . . . would not be consistent with the statutory text," 641 F. Supp. 2d at 895-96, we disagree.

matters not in the record before us. *Ashton-Blair v. Merrill*, 187 Ariz. 315, 317 (App. 1996).[6]

**¶21** The plaintiffs also argue that their notices of claim complied with § 12-821.01(A) because they contained "just enough" facts to allow the defendants to investigate liability—something the plaintiffs allege the defendants chose not to do. They claim the defendants could have requested more facts and nothing prevented them from taking steps to obtain additional information. However, in support of this argument, the plaintiffs again rely on cases which only address the requirement that facts support the specific amount claimed. *See Backus*, 220 Ariz. 101, ¶¶ 22-23, 28; *Yollin v. City of Glendale*, 219 Ariz. 24, ¶ 32 (App. 2008). Furthermore, those cases do not stand for the proposition suggested by the plaintiffs here—that because a defendant has the ability to request more facts, a claimant need not strictly comply with the language of § 12-821.01(A). *See Backus*, 220 Ariz. 101, ¶¶ 28-29; *Yollin*, 219 Ariz. 24, ¶¶ 32-33; *Yahweh v. City of Phoenix*, 243 Ariz. 21, ¶ 12 (App. 2017) (claimants must "strictly comply with § 12-821.01(A)" and "[p]ublic entities . . . are not duty-bound to assist claimants with statutory compliance"); *cf. City of Mesa v. Ryan*, 256 Ariz. 350, ¶¶ 10-11 (App. 2023) (as to amount-certain requirement of § 12-821.01(A), statute "is clear as written and should be taken to mean what it says"). While comprehensive briefing is not required, under § 12-821.01(A), a claimant must include "facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed," and the plaintiffs failed to do so with respect to all but their claim against the state for negligent issuance of a liquor license. *See Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, ¶ 10 (2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements . . . ."). Thus, the superior court properly dismissed the plaintiffs' other claims on that basis.[7]

---

[6]Even assuming the collision report had been included and contained the kind of information typically found in such documents, we have serious doubt that it would draw sufficient factual links to the specifically alleged negligent acts. Absent these factual links, the defendants can only speculate as to why they might be the subjects of a lawsuit upon receiving a notice of claim.

[7]The plaintiffs also argue for the first time in their reply to the town's answering brief that the town waived any argument that the notice of claim did not satisfy § 12-821.01(A), suggesting that argument was not timely

## II. Duty of Care

**¶22**        The plaintiffs next assert that the superior court erred by dismissing their claim for negligent issuance of a liquor license and their accompanying claim against the state for negligent infliction of emotional distress.  The court reasoned that the state owed plaintiffs "no duty to prevent drunk drivers from causing collisions."[8]  We review de novo the grant of a motion to dismiss for failure to state a claim upon which relief can be granted.  *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, ¶ 6 (2014).  "[W]e assume as true the facts alleged in the complaint and will not affirm the dismissal unless satisfied as a matter of law that plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof."  *Fid. Sec. Life Ins. Co. v. State*, 191 Ariz. 222, ¶ 4 (1998).

**¶23**        The plaintiffs' complaint alleges, in relevant part, that the state "holds non-delegable duties to the public at large to provide protection from establishments that regularly over-serve their patrons and create hazardous conditions."  It further alleges that the state breached this duty by failing to investigate Billy Jack's and by renewing its license to sell liquor despite its history of infractions and evidence that the bar "has a regular and frequent tendency to over-serve its patrons."

**¶24**        The state moved to dismiss these claims on the basis that the plaintiffs had failed to set forth any factual or legal basis supporting the existence of a duty.  The superior court granted the motion to dismiss, finding that even assuming the allegations in the complaint are true, "the State had no legal duty arising from its issuance of a liquor license to protect plaintiffs from the harm caused when Browne drove drunk and caused the accident that injured them."

---

presented to the superior court.  However, we do not consider arguments raised for the first time in a reply brief.  *See Dawson v. Withycombe*, 216 Ariz. 84, ¶ 91 (App. 2007).

       [8]The plaintiffs allege the same negligent acts as the basis of both claims and both require a showing that the state owed a duty of care. *See Gipson v. Kasey*, 214 Ariz. 141, ¶ 9 (2007) (must prove duty to establish claim for negligence); *Vasquez v. State*, 220 Ariz. 304, ¶ 22 (App. 2008) (must prove duty when negligence is basis of infliction of emotional distress claim).

¶25 The first element of a negligence claim requires proof that the defendant owed "a duty . . . to conform to a certain standard of care." *Gipson v. Kasey*, 214 Ariz. 141, ¶ 9 (2007). The existence of a duty is a threshold legal issue to be decided by the superior court, and where there is no duty, a defendant cannot be liable for negligent acts "no matter how unreasonable their conduct." *Id.* ¶¶ 9, 11. "[D]uty is not presumed," and the plaintiff bears the burden of proving its existence. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, ¶ 2 (2018). To prove a duty exists, the plaintiff must show either a common law special relationship or a relationship created by public policy as evidenced primarily by statutes. *Id.* ¶¶ 14-15. Statutes create a duty when the plaintiff "is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against." *Gipson*, 214 Ariz. 141, ¶ 26; *see also Quiroz*, 243 Ariz. 560, ¶ 15; *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, ¶ 21 (2021).

¶26 Our legislature designed the statutory scheme that established the Arizona Department of Liquor Licenses and Control (the "Department") to regulate actions of a licensee that could harm the general public. *See* A.R.S. §§ 4-111 through 4-120. As our jurisprudence has long acknowledged, the Department established "state-wide control over the traffic in intoxicating liquors" to address "the many inherent evils attending the traffic [of alcohol] and the abuses arising therefrom when not regulated." *Mayor & Common Council of Prescott v. Randall*, 67 Ariz. 369, 374-75 (1948). Our legislature designed our state's liquor laws, fostered and enforced by the Department, "to protect the welfare . . . and safety of all the citizens by providing for the strict regulation and control of the . . . distribution of alcoholic beverages." *Mendelsohn v. Superior Court*, 76 Ariz. 163, 169 (1953).

¶27 The Department has the express statutory authority to investigate and sanction licensees for serving obviously intoxicated persons. A.R.S. § 4-112(C) (director "shall establish" investigation unit "that has as its sole responsibility the investigation of compliance with this title"); § 4-118 (power to investigate premises); § 4-244(14) (unlawful for licensee to sell liquor to "obviously intoxicated person"). And, the legislature has provided the Department powerful regulatory tools to deter licensees from doing so: potential sanctions including fines for each violation or revocation of a liquor license. A.R.S. § 4-210.01 (fines); § 4-210(A)(9) (power to suspend or revoke liquor licenses if licensee "violates or fails to comply with . . . any liquor law of this state").

**¶28**　　　　In short, this statutory scheme, which created the Department and provided its authority, expressly identified the overservice of patrons as among the risks to the general public that it sought to prevent. Conversely, those potentially harmed by an overserved patron represent the precise class of persons those statutes were designed to protect. *See Del E. Webb Corp. v. Superior Court*, 151 Ariz. 164, 169 (1986) (statutes prohibiting sale of alcohol to intoxicated persons "perhaps primarily . . . intended to protect the general public"). Thus, under the criteria for the statutory creation of a duty articulated by our supreme court, the Department had a duty to plaintiffs in these circumstances. *See Gipson*, 214 Ariz. 141, ¶ 26; *see also Quiroz*, 243 Ariz. 560, ¶ 15.[9]

**¶29**　　　　The state maintains, however, that the above statutory duty is akin to a general law enforcement duty to enforce criminal laws. As the state correctly observes, we have previously held that the establishment of a police department does not make it a "general insurer of safety." *Hogue v. City of Phoenix*, 240 Ariz. 277, ¶ 12 (App. 2016) (quoting *Austin v. City of Scottsdale*, 140 Ariz. 579, 582 n.2 (1984)). But the state created the Department to oversee only a specific and far more narrow group of actors than the general public: the state's liquor licensees. The potential harms addressed by the statutory scheme are also specific: those caused by the abuse of alcohol that can be mitigated by the licensees. And, the statutory scheme seeks to protect a specific class of persons: those potentially harmed by the abuse of alcohol. *See Randall*, 67 Ariz. at 374-75; *Mendelsohn*, 75 Ariz. at 169.

**¶30**　　　　We therefore reject the state's suggestion that by acknowledging an actionable duty here, we would make the Department a general insurer of public safety. Notably, our state's regulatory agencies

---

[9]Plaintiffs have alternatively argued that the state has voluntarily undertaken a duty, pursuant to Restatement (Second) of Torts §§ 324A (1965), to protect the Arizona public by thoroughly and comprehensively regulating the sale of alcohol and commercial liquor establishments. Because we have found the state owed plaintiffs a duty anchored in express statutory law, and because plaintiffs failed to raise this argument until their motion for new trial in superior court, we decline to address that argument. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, ¶ 25 (App. 2021) (arguments not raised below waived on appeal); *Kent v. Carter-Kent*, 235 Ariz. 309, ¶ 20 (App. 2014) (party waives issues raised for first time in motion for new trial).

are not broadly immune from civil lawsuits seeking redress for personal injury. Specifically, our legislature has provided that our state agencies, like the Department, can be sued for the "issuance of . . . any permit, license, certificate, approval, order or similar authorization" provided the plaintiff can show "gross negligence." A.R.S. § 12-820.02(A)(5). Were we to find no duty here, we would render that provision a nullity for those persons the Department was created to protect.

¶31        The superior court therefore erred in granting the state's motion to dismiss on the basis that the state did not owe a duty of care. We therefore reverse the court's judgment on this issue and remand for further proceedings on that claim.

## Disposition

¶32        For the foregoing reasons, we dismiss the town's cross-appeal for lack of jurisdiction and affirm the superior court's judgment as to the plaintiffs' notices of claim. We reverse the court's judgment with respect to the plaintiffs' claim for negligent issuance of a liquor license and remand for further proceedings consistent with this opinion.

E P P I C H, Presiding Judge, concurring in part and dissenting in part:

¶33        As to the duty issue, I respectfully dissent. Although "[a] statute reflecting public policy may create a duty when a plaintiff 'is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against,'" *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, ¶ 15 (2018) (quoting *Gipson v. Kasey*, 214 Ariz. 141, ¶ 26 (2007)), the statute must also regulate conduct, *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, ¶ 25 (2021). However, most of the statutes on which the majority relies generally describe the powers, duties, and organization of the Arizona Department of Liquor Licenses and Control. *See* A.R.S. §§ 4-111 to 4-120. And to the extent it could be argued that those statutes do regulate conduct, it is not conduct relevant to the issues presented in this case. *See id.* The majority points to the statute for revoking and suspending a liquor license, but the conduct being regulated there is that of the licensee or persons on the licensed premises, not the licensor. *See* A.R.S. § 4-210(A). Other statutes, which are more directly linked to the harms the plaintiffs suffered here, tend to govern the conduct of persons consuming or providing the alcohol. *See, e.g.*, A.R.S. § 4-251 (prohibiting consumption of alcohol or possession of open alcohol containers in motor vehicles); A.R.S. § 4-311(A) (licensee may be liable for personal injuries arising from the sale of liquor to "obviously intoxicated" purchaser); A.R.S.

§§ 28-1381 to 28-1383 (offenses for driving or actual physical control while under the influence of alcohol). I would therefore conclude that the plaintiffs have not met their burden of showing the existence of a public-policy-based duty here. *See Quiroz*, 243 Ariz. 560, ¶ 2.

¶34 Furthermore, to the extent that the majority focuses on the narrow class of licensees subject to the state's regulation, that focus is misplaced, insofar as the special-relationship-based duty analysis turns less on the relationship between the state and licensees, and more on the relationship between the state and those to whom the purported duty is owed. In *Hogue v. City of Phoenix*, we expressly rejected the idea that the existence of a city police laboratory bureau creates a duty to the general public "to conduct all DNA tests on all evidence or subject the City to liability if such testing is not done immediately." 240 Ariz. 277, ¶¶ 1, 13 (App. 2016). In our reasoning, we noted that imposing such a duty could potentially give rise to a cause of action for negligent investigation for every unsolved crime. *Id.* ¶ 13 (citing *Vasquez v. State*, 220 Ariz. 304, ¶ 31 (App. 2008)). Rather, we determined the question of duty turns on whether the public agency's conduct is such that it has "endeavor[ed] to provide *specific protection* to a *particular person*." *Id.* ¶ 12 (emphasis added); *see also Noriega v. Town of Miami*, 243 Ariz. 320, ¶ 29 (App. 2017); *Dinsmoor v. City of Phoenix*, 249 Ariz. 192, ¶ 19 (App. 2020), *vacated in part on other grounds,* 251 Ariz. 370, ¶ 29 (2021).

¶35 The majority identifies the purported protected class as consisting of "those potentially harmed by the abuse of alcohol," which it characterizes as a "specific class of persons." But that class is indistinguishable from the general public. Thus, because I agree with the state that the statutory authority here is akin to general law enforcement powers, which provide no actionable duty to protect any particular individual member of the public, *see Hogue*, 240 Ariz. 277, ¶¶ 12-13, I would affirm the superior court's ruling on the duty issue. In all other respects, I whole-heartedly concur in the majority's well-reasoned opinion.